FILED by \_\_\_ D.C.

ELECTRONIC

Nov 1 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-21140-CIV-HUCK/SIMONTON

NISSIM CORP.,

    Plaintiff,

v.

CLEARPLAY, INC., *et al.*,

    Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEFING REGARDING NISSIM'S DVD LICENSE AGREEMENTS**

Plaintiff hereby responds to Defendants' supplemental brief in support of their motion in limine to exclude Nissim's licensing, served October 28, 2005.

**Introduction**

Toshiba and Thomson were the first companies to execute a patent license agreement with Nissim. Toshiba and Thomson took a license under the '678, '945, and '013 patents in order to practice the DVD Specifications.[1] Toshiba is also the company that publishes the DVD Specifications, and Toshiba and Thomsom are two of the ten companies that <u>wrote</u> the DVD Specifications.[2] Since Toshiba and Thomson wrote the DVD Specifications, and took a license under several of the patents in suit, it is reasonable to conclude that if those patents-in-suit were not needed to practice the DVD Specifications, then Toshiba and Thomson would not have taken a license to the patents. The same goes for the seven other companies (Hitachi, Ltd., Matsushita

---

[1]   *See* Declaration of Richard Mockler, Exhibits A and B thereto, filed under seal in support hereof.

[2]   *See* Plaintiff Nissim Corp.'s Supplemental Statement Regarding Nissim's DVD Device License Agreements, filed October 18, 2005, at Exhibit C thereto.

Electric Industrial Co., Mitsubishi Electric Corporation, Philips Electronics N.V., Pioneer Corporation, Sony Corporation, and Victor Company) who both authored the DVD Specifications and have licensed the patents-in-suit.[3] Yet, Defendants want this Court to suspend all reason and reach the opposite conclusion – that the patents are not necessary to practice the DVD Specifications, and are therefore not licensed at all, even though the patents are expressly listed on the face of 88 license agreements, including the licenses executed by the very people who wrote the DVD Specifications. This argument is sheer nonsense. In fact, Defendants' argument is so far removed from the truth that they allege the only "Essential Patent" to be Nissim's '805 patent (Br. at 5), when the '805 patent was not even issued until 2001, years after the companies who wrote the DVD Specifications had already executed license agreements under the patents-in-suit.

Defendants open their supplemental brief with the allegation that Nissim has "changed its position concerning the relevancy of the license agreements." (Br. at 1). This is completely untrue. Nissim has asserted the relevancy of the license agreements since "Day One" of this litigation. In fact, the relevance of the license agreements to the accused DVD Player is asserted in the original and amended Complaints in this action. Moreover, a critical fact that Defendants continually ignore is that Nissim produced the actual DVD device license agreements a year ago during discovery in this case. Third, Nissim was deposed (in Max Abecassis' third deposition given in this case) on the specific topic of the license agreements months ago. For Defendants to therefore state that Nissim asserted the agreements "late," and that Nissim has not been deposed on the subject of licensing, are material misrepresentations of the truth.

Defendants' supplemental brief also conveniently ignores the actual correspondence with licensees regarding which claims are necessarily infringed by the DVD Specifications. In the

---

[3] *See* Amended Complaint, ¶ 12.

2

documents produced to Defendants, but not mentioned in Defendants' supplemental brief to this Court, there is an overlap of more than 20 claims that are both at issue in this suit and licensed under the DVD license agreements.[4]  It is therefore completely without merit for Defendants to assert that the license agreements are not relevant to this action.

Precisely because of the extensive overlap of claims between the DVD Specification and the excluded field of use, the only way to exclude the use of the inventions where the segment information is external to the DVD is with the field of use "carve-out" language, and not with the identification of particular claims or patents.  In other words, if, as Defendants allege, the claims that are infringed by the "CustomPlay feature" were different than the claims that are infringed by the DVD Specifications, there would have been no need to carve out the excluded field of use, since those claims could simply have been withheld from the license.  It is precisely because the claims <u>are the same</u> that Nissim negotiated the carve-out.

Further, numerous claims have not been asserted against ClearPlay because of Nissim's DVD-Device License Agreement with Thomson, the manufacturer of the ClearPlay DVD Player accused to infringe in this action.[5]  Defendants, however, cannot have the benefits of the Thomson-Nissim DVD Device License Agreement <u>and</u> argue that the DVD Device License is irrelevant to this case.  If not for the Thomson-Nissim DVD-Device License Agreement, Nissim

---

[4] The claims asserted during license negotiations to be infringed by the DVD Specifications included the following:  claims 1-3, 7-8, 10-15, and 18 of U.S. Patent 5,434,678; claims 5-12 of U.S. Patent 5,589,945; and claims 1-4, 7-10, 13-16, 18, and 21-23 of U.S. Patent 5,913,013.  *See* Mockler Decl., Composite Exhibit C thereto (page 2 of each letter).  Thus, the claims essential to the DVD Specification <u>and</u> that have been asserted in this litigation include claims 1-3, 8, 10, 13-15 and 18 of the '678 patent, claims 5-12 of the '945 patent, and claims 1, 3, 7, 9, 13 and 15 of the '013 patent.

[5] Specifically, Nissim did not assert claims 7, 11 and 12 of the '678 patent or claims 2, 4, 8, 10, 14, 16, 18 and 21-23 of the '013 patent.

3

would have alleged infringement of 75 claims rather than the 36 claims at issue.[6]  If Defendants want the license agreements to be treated as though they do not exist, then Nissim should be allowed to assert the additional claims which it previously held back from asserting based on the existence of the Nissim-Thomson DVD Device License Agreement.  It is simply unjust for Defendants to avoid claims for patent infringement by reliance on a DVD license from Nissim to Thomson, and at the same time be permitted to argue that the patents are invalid for DVD.  The only thing more unfair would be for the Court create the legal fiction that the license does not even exist.

Defendants simply ignore the direct relevance of the DVD license agreements to their invalidity defenses.  Defendants' main validity argument is that the <u>specifications</u> of the patents-in-suit are not enabling for DVD technology.  All of the patents that are licensed in the DVD license agreements, including the patents at issue here and the patents not asserted here, have the same <u>specifications</u>.  Thus, the licenses are plainly relevant to demonstrate that the DVD industry deems the specifications to be valid for DVD technology.  Every fact that is helpful to Nissim is not "unduly" prejudicial to Defendants.  On the related issue of obviousness, to which the license agreements are also directly relevant, the Federal Circuit has repeatedly held that successful licensing of the patents in suit is often <u>the most probative</u> evidence of validity possible, because it reflects "real-world" considerations rather than the litigation-induced testimony of paid expert

---

[6] As the Court is aware, Nissim asserted infringement of 75 claims in the case against ClearPlay and ISP Services.  These additional claims are at issue in the ISP Services case because the MaxPlay Player does not have the benefit of the Thomson-Nissim DVD Device License Agreement.

4

witnesses.[7]  Surely, if evidence of a patentee's licensing would "unfairly" prejudice a jury, then there would be a plethora of cases to that effect cited by Defendants.  Notably absent, however, in the multitude of briefs that the Court has allowed Defendants to file on this motion, is a citation by Defendants to any legal authority excluding from evidence licenses to the patents-in-suit in any prior case.  Clearly, instead of sound legal authority, Defendants' entire motion is premised on misrepresentations of the facts and inviting the Court to commit clear error.

1.    **The Licensed Patents Are All Related**

Defendants state that the license agreements pertain to the "patents in suit as well as unrelated patents." (Br. at 2).  This is not accurate.  The other patents licensed by Nissim are not "unrelated" to the patents in suit.  In fact, they are related and constitute the same family of inventions.  The '805 patent, which Defendants claim was the "driving force" behind the licenses (Br. at 2), issued from the exact same patent application that first issued as the '472 patent.  *See* Mockler Decl., Exhibit D thereto.  The same goes for the '833 patent, which also issued from the exact same patent application as the '472 patent.  *Id.*, Exhibit E thereto.  This is significant for at least one obvious reason:  The central defense in this case is that the specifications for the '678 and '472 patents do not enable the inventions for DVD.  Yet, the specification for the '805 and '833 patents is the exact same specification as that for the '472 patent.  Even according to Defendants, the '805 and '833 patents are licensed for DVD players by virtually every company in the world.  Thus, the specification of these patents – the same specification as that of the '472 patent – is deemed by the DVD industry to sufficiently teach enough about the inventions to

---

[7]   The licenses are highly relevant to the issue of obviousness.  *See Stratoflex, Inc. v. Aerogroup Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) ("Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record."); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986) (same); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997).  Even this Court's Omnibus Order on Summary Judgment Motions Regarding Validity, dated October 3, 2005, at pages 15-16, notes that the alleged commercial success of the patentee's licenses must be considered on the issue of obviousness.

5

work on a DVD. Only by mischaracterizing the '805 and '833 patents as "unrelated" to the patents in suit have Defendants attempted to obfuscate the issue.

Likewise, claim 21 of the '013 patent, which Defendants also assert was a "driving force behind the licenses," has the same specification as the '678 patent, the '945 patent, and all the other claims of the '013 patent. Thus, if that specification is enabling for DVD (which according to the skilled artisans in the industry it is), it is enabling for DVD for all the asserted patents because they have the same specification. This is also true for the '849 and '444 patents – two other patents licensed in certain agreements – because they, too, have the same specification as the '678, '945 and '013 patents. *See* Mockler Decl., Exhibits F-G thereto. Thus, Defendants' attempt to argue that the other patents licensed in the agreements are "unrelated" to the patents-in-suit is simply false. The licensed patents are the patents at issue in this case, plus patents that are based on the same original 1992/1993 patent application filed by Nissim.

Additionally, it is absurd for Defendants to assert that the '805 patent (and not the patents-in-suit) was the "driving force" behind the licenses. (Br. at 2). The '805 patent did not issue until 2001, which was well after many of the licenses, including the initial licenses to Toshiba and Thomson, were executed. As for claim 21 of the '013 patent, another "driving force behind the licenses" according to Defendants, that claim has more limitations than several of the other independent claims of the '013 patent. Thus, if claim 21 is infringed by the DVD Specifications, the broader claims of the same patent are infringed as well.

**2.    The "Technology At Issue" Is Not Limited To A Single Embodiment Of The Patents**

Defendants argue *ad nauseam* that "the only technology at issue in this case relates to navigation data provided separately from the DVD." (Br. at 4). These statements are absolutely false. It is the claims of the '678, '945, '013 and '472 patents that constitute the "technology at

6

issue" in this case. These claims are <u>not</u> limited to navigation data provided separately from the DVD. Defendants' suggestion otherwise is a total fabrication. Apart from the '401 patent, the asserted claims of the patents in suit are not concerned with, and do not depend on, where the navigation data is located. Thus, for example, claim 1 of the '678 patent is infringed by an on-the-disc embodiment, as well as an off-the-disc embodiment. Indeed, if the off-the-disc embodiment was not covered by the very same patent claims as the claims covering the on-the-disc embodiment, then there would have been no need for a restricted field of use in the license agreements.

In a similar vein, Defendants make the wild accusation that Nissim "carv[ed] the broadest sweep of the patents out of the licenses and assert[ed] in the licenses a much narrower scope of the patents than being asserted here." (Br. at 4). Hopefully the Court sees this as the misleading proposition that it is. If Nissim had asserted a more narrow scope of the patents in its licensing than it has in this litigation, as Defendants claim, then the patents would not even cover the off-the-disc embodiment. Thus, there would have been no point to excluding the off-the-disc embodiment from the licensed uses of the patents. As is plain, however, the patents cover both embodiments, and Nissim has consistently argued that the scope of the patents covers the two embodiments both in its licensing activities and before this Court.

**3.      Defendants Have Offered No Evidence Of The Licensees' State Of Mind**

Defendants also make the startling claim that "to evaluate the relevance of the license agreements, one must determine what the <u>licensees</u> deemed they were licensing." (Br. at 5; emphasis in original). This remarkable statement is conspicuously unsupported by any citation of law. Nissim is unaware of any case law rendering a licensee's state of mind relevant to the analysis. However, even if Defendants' assertion were an accurate representation of the legal

7

standard, it is an interesting comment for Defendants to make, since Defendants, despite having received from Nissim all of the license agreements a year ago, failed to obtain, or even formally seek, any evidence of what any of the licensees deemed they were licensing.[8]  More specifically, despite the fact that Nissim identified, through production of the license agreements, all of its licensees, Defendants did not take a single licensee deposition, nor did Defendants even issue a document subpoena to any Nissim licensee.  For Defendants to therefore assert that evidence of the licensees' state of mind is the critical issue before the Court – a false statement in its own right – is to highlight Defendants' failure of proof under their own asserted legal standard.

**4.      Defendants Misrepresent The DVD Specifications**

Defendants spend the majority of their supplemental brief mischaracterizing the workings of the DVD Specifications.  Defendants get off to a dubious start by asserting that the only "Essential Claims" licensed are the claims of the '805 patent.  (Br. at 5).  Defendants' meritless argument ignores that the '805 patent did not even issue until 2001, years after the authors of the DVD Specifications had already taken licenses to Nissim's other "Essential Patents."

Undeterred by the facts, Defendants then focus their arguments on the Camera Angle and MultiStory Seamless Branching features found within the DVD Specifications that infringe the Nissim patents.  This attack begins at page six of Defendants' supplemental brief where they assert that Nissim relied on non-asserted claims to highlight the Camera Angle and MultiStory Seamless Branching features.  Defendants then characterize this reliance as an "admission" that Nissim's seamless branching technology, "if it exists at all, is found in" non-asserted claims.  This argument fails on its face because the statements that Defendants quote make clear that technologies are only examples of claims infringed by these features.  An example is just that, an

---

[8]  In all likelihood, Defendants investigated this issue through informal discovery and, dissatisfied with the response they received from DVD manufacturers, Defendants did not take any depositions concerning the topic.

8

example, not an exclusive list.  Additionally, Defendants purposefully ignore the correspondence demonstrating that the same claims at issue in this case were the subject of the license negotiations.

Apparently realizing the limitations of their first argument, Defendants change their tact in the next section of their supplemental brief.  In section "B" starting on the bottom of page six, Defendants argue that the Camera Angle function and the MultiStory Seamless Branching function of the DVD Specifications require "parallel segments" that are not found in the ClearPlay technology.  Defendants strategy is thus to create and then knock down a strawman. In particular, Defendants argue that the Camera Angle and Multistory Seamless Branching features "are only seamless according to the DVD Specification when they are alternative interleaved segments."  (Br. at 7).

Defendants' argument is wrong for multiple reasons.  First, as Nissim has asserted from the outset of this case, the ClearPlay technology is used with, and ClearPlay has created filers for, DVDs that utilize <u>alternative interleaved segments</u>.  Second, Defendants conveniently ignore that claims requiring parallel segment limitations <u>are</u> at issue in this case.[9]  Third, and more fundamentally, Defendants' argument completely ignores the legal scope of independent and dependent patent claims.  It is black-letter patent law that independent claims cover their corresponding dependent claims.  Thus, if a dependent claim recites parallel segment limitations, its corresponding independent claim must be construed broadly enough to cover the limitations contained in the dependent claim.  Accordingly, even if *arguendo* Defendants did not infringe one of the asserted dependent claims requiring parallel segments, *e.g.*, claim 2 of the '678 patent, Defendants may still infringe the corresponding independent claim, claim 1 of the '678 patent.

---

[9] The claims requiring parallel segment limitations at issue in this case are claims 2, 10, 15, 17, and 19 of the '678 patent; claims 7, 10, and 12 of the '945 patent; and claims 3, 9, and 15 of the '013 patent.

9

Assuming just for the sake of argument and illustration, even if Defendants are correct that the DVD Specifications infringe the parallel segment claims of the Nissim patents, those claims would include <u>'678 claim 1 and claim 2</u>, among others.  Thus, Defendants' convoluted and confusing argument falls apart because, even under their "analysis," claim 1 of the '678 patent is both covered by the licenses and infringed by Defendants.

**5.    The Patents In Suit Are Infringed By The DVD Specifications**

With respect to the '678 patent, Defendants argue that the DVD Specifications do not require any content category, and therefore that the '678 patent is not licensed.  (Br. at 10).  Since the '678 patent is typically the first patent listed in the 88 license agreements, the Court should readily suspect that Defendants' argument will not withstand scrutiny.  In fact, this argument both misses the point and analyzes the claims backwards.  Many DVD-videos designed for use with players operating according to the DVD Specifications do have user preferences for content categories, including for violence.  When those videos are played on a player compliant with the DVD Specifications, the video system claims and methods of the '678 patent are practiced.  Thus, if a DVD player is capable of playing such videos, which all players compliant with the DVD-Spec are, then it will infringe the '678 claims when it plays those videos.

With respect to the '945 patent, Defendants argue that to infringe, a player "would first have to retrieve a map that identifies a number of video segments, and then, based on mapped segments, choose segments to display that correspond to the viewer's preferences."  (Br. at 10).  Contrary to Defendants' unsupported assertion, this is precisely how a DVD player functions when playing many DVDs having alternative interleaved segments.  Additionally, Defendants' argument ignores that the '945 patent is explicitly listed as a "licensed patent" in all the license agreements.

10

The same goes for the '013 patent, which is also explicitly listed as a licensed patent in the license agreements. Defendants seem to suggest that only claim 21 of this patent is infringed by the DVD Specifications, but the only support for the suggestion is correspondence that discusses claim 21 as a representative and exemplar claim. Claim 21 was never held out as an exclusive basis of infringement. Thus, there is no basis to conclude that only claim 21 is infringed. Defendants' argument also ignores the multiple other claims of the '013 patent that were considered infringed by the DVD Specificiations in the actual license negotiations and that are at issue in this case. *See* Exhibit A. Apparently recognizing the weakness of its position, Defendants are then reduced to arguing that the '013 claims require parallel segments to be infringed. (Br. at 11). As discussed above, however, this argument is without merit because it ignores that Defendants are accused in this case of infringing parallel segment dependent claims and ignores that independent claims which it is also accused of infringing cover but do not require the use of parallel segments.

In a similar vein, Defendants' position regarding the '472 patent is premised on the "parallel segment" argument. (Br. at 12). This argument, however, misses the mark for the reasons discussed above. Moreover, the DVD Specifications are written to require a player to have the capability of playing multiple versions of a DVD using a content map (*i.e.*, navigation data). Like the other asserted patents, the '472 claims do not depend on whether the map is located on or off the DVD-video itself, and thus the location of the map is immaterial to analyzing infringement of the '472 claims. The '472 patent is therefore infringed by a player's use of a content map contained on or off the disc. Since players built in accordance with the DVD Specification are required to utilize content maps in the playing of multiple version DVDs, the '472 claims asserted in this case are infringed by the DVD Specifications.

11

**6.      Defendants Fail To Address The Relevance Of Nissim's Licensing To Damages**

Finally, Defendants' supplemental brief completely ignores the obvious relevance of the license agreements to the issue of damages. Defendants failed to respond to this argument, presumably because Nissim clearly demonstrated the relevance of the licenses to the issue of damages. In particular, Nissim's established licensing practices are indisputably relevant both to the structure of the reasonable royalty and the royalty rate. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109 (Fed. Cir. 1996); *Georgia-Pacific v. U.S. Plywood*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and affirmed*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971). If Nissim negotiated a per-player royalty base in 88 consecutive licenses, the jury should be able to consider this fact in determining which expert's proposed hypothetical royalty base is proper. Additionally, the documents show that ClearPlay has repeatedly stated that if Defendants were found liable in this case, the royalty damages would only be $0.25 per player – the rate in Nissim's DVD license agreements. *See* Mockler Decl., Exhibits H-I thereto. ClearPlay's damages expert also opines that $0.25 is the correct rate. Defendants' supplemental briefing on the relevance of the licenses, however, is completely silent on the licenses' clear relevance to the issue of damages, because Defendants have no argument to the contrary. The license agreements are directly relevant to the issue of damages. *See B & H Mnf'g Inc. v. Foster-Forbes Glass Co.*, 26 USPQ2d 1066, 1070 (N.D. Ind. 1993) (license agreements found useful to jury for establishing a damages floor; agreements also found relevant to issue of patent validity).

## Conclusion

There is no sound legal basis to exclude from evidence the successful DVD licensing of the patents-in-suit. Defendants' invitation to error is premised on blatant distortion of the license agreements, misrepresentation of the DVD Specifications, and turning a blind eye to the governing law, which holds that successful licensing is potentially the most probative evidence of patent validity and is also relevant to damages. Defendants' motion in limine should be denied.

Dated: November 1, 2005

Respectfully submitted,

John C. Carey (Fla. Bar No. 0078379)
Richard J. Mockler (Fla. Bar No. 0563986)
STROOCK & STROOCK & LAVAN LLP
3160 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 789-9358
Facsimile: (305) 789-9302
jcarey@stroock.com (email)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile and U.S. Mail this 1st day of November, 2005 to: Gregory A. Tamkin, Esq., DORSEY & WHITNEY, LLP, 370 17th Street, Suite 4700, Denver, Colorado 80202; and Wayne H. Schwartz, Esq., LEE & AMTZIS PL, 5550 Glades Road, Suite 401, Boca Raton, FL 33431.

_____
John C. Carey

14