UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-21140-CIV-HUCK/O'SULLIVAN

NISSIM CORP.,

       Plaintiff,

v.

CLEARPLAY, INC., et al.,

       Defendants.

_____/

## ORDER DENYING MOTION FOR SUMMARY DETERMINATION

This matter is before the Court on Nissim Corp.'s Motion for Summary Determination (D.E. #701), filed August 10, 2010. Nissim moves for a summary determination that ClearPlay, Inc. is not complying with the terms of the parties' November 23, 2005 Settlement and License Agreement. For the reasons below, the motion is denied, and the dispute will be submitted to the Special Master for further proceedings.

Nissim owns several patents relating to systems for filtering objectionable content from certain video media, such as DVDs. ClearPlay produces and sells DVD players, software, and filters or maps that allow consumers to filter objectionable content from movies. Nissim sued ClearPlay for patent infringement in 2004. On the eve of trial, the parties entered into a Settlement and License Agreement. As part of the Agreement, ClearPlay agreed to comply with content coding specifications developed by Nissim's subsidiary, CustomPlay, LLC. The CustomPlay Specifications provide extensive definitions and examples of objectionable content. ClearPlay agreed to create filters that were compliant with the CustomPlay Specifications.

In June 2007, Nissim filed a Motion to Enforce Settlement Agreement, alleging that certain ClearPlay filters violated the parties' Agreement. At issue was the degree of compliance with the CustomPlay Specifications that was required by the Agreement. Paragraph 1.4 of the Agreement defines "ClearPlay CustomPlay OC Map":

> "ClearPlay CustomPlay OC Map" shall mean a CustomPlay OC Map generated by ClearPlay. A ClearPlay CustomPlay OC Map: i) identifies the beginning frame and the ending frame of video segments that contain possibly objectionable

> content, and assigns a category and a level of explicitness, using the categories and levels standardized by the CustomPlay OC Specifications; ii) shall not modify, expand, reduce, or combine, content categories, or levels of explicitness specified by the CustomPlay OC Specifications, and; iii) <u>shall be in substantial compliance with the CustomPlay Specifications, it being recognized by the parties that application of the CustomPlay OC Specifications requires flexibility of artistic judgment within the overall goal of maintaining consistency</u>. . . .

Nissim alleged that ClearPlay's filters were not substantially compliant with the Specifications, as required by Paragraph 1.4. With the parties' consent, the Court appointed a Special Master to determine whether ClearPlay's filters satisfied the requirements of the Agreement.

On March 31, 2009, the Court issued an order adopting a report and recommendation by the Special Master and denying Nissim's Motion to Enforce Settlement Agreement. In doing so, the Court found that the "artistic judgment" language in Paragraph 1.4 "grants ClearPlay discretion to depart from the CustomPlay Specifications . . . when doing so is reasonably necessary, in ClearPlay's reasonable artistic judgment, for the general appreciation or understanding of the motion picture at issue." *Nissim Corp. v. ClearPlay, Inc.*, No. 04-21140-CIV, slip op. at 4 (S.D. Fla. Mar. 31, 2009).

On appeal, the Federal Circuit reversed, finding that such an "artistic judgment exception would swallow the substantial compliance rule." *Nissim Corp. v. ClearPlay, Inc.*, No. 2009-1327, 2010 WL 1838949, at *5 (Fed. Cir. May 10, 2010). Thus, ClearPlay could not refuse to code objectionable material simply because it determined, in its own artistic judgment, that the material's relevance to the movie outweighed its objectionableness. The Federal Circuit remanded the case to this Court to determine whether ClearPlay's filters substantially comply with the Specifications.

On remand, Nissim has moved for a summary determination that ClearPlay is not complying with the Agreement. Nissim argues that ClearPlay has admitted—in numerous testimonial and written statements—that it determines what to code as objectionable content according to its own independent judgments, not according to the Specifications. And because the Federal Circuit held that the Specifications govern objectionableness, ClearPlay is noncompliant.[1] ClearPlay, on the other hand, relies on the Federal Circuit's opinion to argue

---

[1] Despite what ClearPlay says, the Court does not read Nissim's motion to argue that the Court should revisit the issues of whether ClearPlay incorporated the CustomPlay Specifications into

that whether its filters are in substantial compliance is an issue of fact that should be submitted to the Special Master.

The fundamental dispute here seems to be about whether the Agreement requires ClearPlay (1) to use a specific process or methodology to determine what to code as objectionable content (i.e., use the Specifications in the process of deciding what to code as objectionable content when creating its filters); or (2) to reach a specific result with its objectionable content maps (i.e., objectionable content filters that are in "substantial compliance" with the Specifications). ClearPlay seems to argue the latter. Nissim, however, argues the former—that there is a systemic, methodological compliance failure.

The Court disagrees with Nissim. Paragraph 1.4 states that a ClearPlay CustomPlay OC Map "shall be in substantial compliance with the CustomPlay Specifications." This requires that ClearPlay's filters—not necessarily its methodology—be in substantial compliance with the Specifications. Of course, if ClearPlay uses its own independent judgment instead of the Specifications when deciding what to code as objectionable content, its filters are less likely to be in substantial compliance. In light of the Federal Circuit's ruling, it would be logical for ClearPlay to use the Specifications to decide what to code as objectionable content. But the test for whether ClearPlay's filters are compliant is whether ClearPlay gets to the right result, not how it gets there. In other words, the proof of the pudding is in the eating. This requires a fact-specific inquiry, not a summary determination.

This conclusion is consistent with the Federal Circuit's opinion. The Federal Circuit indicated that the proper course on remand was to determine compliance on a case-by-case basis for each filter. *See, e.g.*, *Nissim*, 2010 WL 1838949 at *4 ("The Specifications are the standard against which the substantial compliance of ClearPlay's OC maps must be measured according to the plain language of the Agreement. It is up to the finder of fact to determine if ClearPlay meets that standard for each selected OC map."); *id.* ("Whether a particular filter for a movie is in 'substantial compliance' is a question of fact to be determined by the fact finder—namely, whether ClearPlay's [objectionable content] maps each comply with the essential requirements of the Specifications."); *id.* ("There are undoubtedly factual questions which will need to be resolved in the course of determining whether there exists substantial compliance for any given

---

its software and DVD players. Rather, Nissim's motion is limited to ClearPlay's filters, and whether ClearPlay has complied with the parties' Agreement in creating them.

3

filter."); *id.* at *5 ("Whether there is substantial compliance is for the fact finder to determine on a case-by-case basis.").

As a result, the Court finds that the proper course is to submit the dispute to the Special Master again. Although Nissim appears to object to this course of action, both parties consented to the Special Master, and the Court sees no reason to use a different procedure. Rather, the Court finds it will be more efficient and fair to use the same procedure as before, with the results from a representative sample set of filters being presumed to apply to all the filters from which the sample was obtained. (*See* D.E. #563, Order Appointing Special Master.)

For the foregoing reasons, it is ordered that Nissim's Motion for Summary Determination is denied. The parties shall submit a proposed schedule for proceedings before the Special Master by Friday, September 24, 2010.

DONE and ORDERED in Chambers, Miami, Florida, September 7, 2010.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record